Shell Petroleum Corporation *v.* Eagle Lumber &
Supply Co.

(Division A.   Jan. 7, 1935.)

[158 So. 331.   No. 31499.]

H. Talbot Odom and Gardner, Denman & Gardner, all
of Greenwood, for appellant.

Alfred Stoner, of Greenwood, for appellee.

Argued orally by **A. F. Gardner**, for appellant, and by **Alfred Stoner**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

Claiming that it built a house for the appellant under a contract so to do, the appellee sued and recovered a judgment from the appellant for the alleged contract price therefor.

One of the assignments of error is that the court below refused to grant the appellant's request for a directed verdict.

The appellee's claim is that the contract for building the house was made with an agent of the appellant, which agent also accepted the house after its completion. This agent was not a general agent of the appellant, and the making of contracts for the building of houses was

not within his express or implied authority. The appellee's contentions are that the making of the contract was (1) within the agent's apparent authority; (2) that he was expressly authorized to make this particular contract; and (3) that the making of the contract was ratified by the appellant.

The appellant is a foreign corporation with an office in New Orleans, Louisiana; the Mississippi territory being under the supervision of that office, and it, in turn, being under the supervision of the St. Louis, Missouri, office. It is engaged in the sale and distribution of petroleum products.

On November 1, 1929, it leased from Birdsong a lot in Schlater, Leflore county, Mississippi, for a period of five years, at a stipulated rental of four hundred thirty dollars per year, payable in equal monthly installments, for use as a filling and service station, the lessor agreeing to erect and equip the station within thirty days thereafter, in default of which the appellant could erect it at a cost not to exceed one thousand two hundred fifty dollars and charge the same to the lessee.

The appellant's business is separated into departments, each having supervision and control of a particular portion of its business. Walker was a member of its sales department in the Mississippi territory, with authority to sell its products and to make contacts with persons for the installation of filling and service stations, but with no authority to make contracts for their construction, but to submit propositions therefor to the appellant's New Orleans office for its approval.

According to the appellee, Walker came into its office early in December, 1929, presented a plan for a filling station for the appellant on the Birdsong lot, and asked for a bid thereon. The appellee then offered to erect the station for one thousand two hundred fifty dollars, and Walker instructed it to forward the plan and the

amount of its bid to the appellant's New Orleans office, stating that appellee would hear directly from the appellant or through him. That a copy of the plan for building the station, with a memorandum thereon reading, ''Filling station Schlater for Shell Petroleum Corporation,'' and a letter explanatory thereof, were mailed by it to the appellant at New Orleans. The receipt of this letter and plan was denied by the appellant. No copy of the letter was preserved by the appellee, and its exact language does not appear; the appellee's evidence being only that it contained a statement of what Walker had said. That afterwards, according to the appellee, Walker came into its office and instructed it to proceed with the erection of the station. This it did, and completed the building about March 1, 1930. After its completion, the building was, and continued thereafter to be, occupied by and used by the appellant in accordance with its lease from Birdsong.

Walker denied making the contract, stating that, at the time the appellee claims that he made it, he was accompanied by Birdsong, that the station was to be erected by the appellee for Birdsong, and that, before beginning the erection of the building, the appellee was to forward a plan therefor to the appellant for its approval. He also denied accepting the building. Birdsong did not testify.

In June, 1930, the appellee sent a bill for the contract price to the appellant's New Orleans office, to which it replied that it did not owe the appellee anything and had made no contract with it. This suit was begun in January, 1931.

In support of its claim that the making of the contract was within Walker's apparent authority, the appellee introduced evidence to the effect that Walker had purchased from it, on a few occasions, articles for, and which were paid for by, the appellant. Only one specific

purchase was shown, and that was for lumber, the price of which was seventy-nine dollars.

Leaving out of view the fact that the evidence docs not disclose that the appellee does not claim to have relied on this evidence of Walker's apparent authority in making the contract, the purchase of these articles by Walker cannot be said to justify the appellee in assuming that he had authority to make a contract of the character here in question.

The contention that Walker was authorized to make this specific contract is not supported by the evidence. It was mailed by the appellee direct to the appellant for its acceptance, and there is no evidence that the appellant authorized Walker to notify the appellee that it had been accepted by the appellant.

The appellee's argument in this connection is that it was hardly probable that Walker would have notified the appellee to proceed with the erection of the building without authority from the appellant so to do, and the jury had the right to believe that, when Walker so instructed the appellee to proceed with the erection of the building, he had been instructed by the appellant so to do.

With this contention we cannot agree. Verdicts must be based on evidence and not on speculation.

In support of its contention that the making of the contract by Walker was ratified by the appellant, the appellee introduced evidence to the effect that Walker to some extent supervised the construction of the building, and, on one occasion, authorized a change in the plan therefor.

While the building was being constructed, Elmore, who was the appellant's maintenance supervisor with authority to make contracts for it in emergencies, and who seems to have supervised the execution of its building erection contracts, came into the appellee's office, com-

plained of its delay in completing the building, and said that the appellant had set aside money for the payment thereof and was losing interest on it.

After this controversy arose between the appellant and the appellee as to the appellant's liability to pay for the erection of the building, the appellant, according to the appellee, through an authorized agent, offered to pay the appellee therefor in monthly installments equal in amount to the monthly rental due from it to Birdsong.

On cross-examination, the witness who so testified, seems to have admitted that the offer was that Birdsong would assign to the appellee his claim for the rent under the lease contract to the extent of the amount due it for the erection of the building, and that the appellant would pay the appellee the rental therefor to that amount.

This, according to the evidence for the appellant, was what occurred.

Aside from the fact that there is no evidence that Walker was authorized to supervise the construction of the building, its supervision by the appellant was within its rights under its contract with Birdsong, for he was to construct the building "subject to the approval of the home office of the Shell Petroleum Corporation."

Elmore's complaint at the delay in the construction of the building was also within the appellant's rights, and his statement that the appellant had set aside money for the payment thereof is not an express admission of the contract, and, assuming Elmore's authority to make it, of itself alone cannot be said to constitute a ratification of the contract.

Assuming, for the purpose of the argument, that the jury could have found, from the evidence, that the appellant's offer to settle the appellee's claim was not to have Birdsong assign the lease to the appellee, but was simply an offer to pay the appellee, provided it would accept payment in monthly installments of thirty-five dol-

lars, such an offer is merely one of compromise (12 C. J. 14), and therefore does not evidence either an admission of the making or a ratification of the contract.

The appellant's request for a directed verdict should have been granted.

Reversed, and judgment here for the appellant.